[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 03 2000
THOMAS K. KAHN
CLERK

_____

No. 98-5822

_____

D. C. Docket No. 95-00335-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOURDES GIL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 3, 2000)**

Before TJOFLAT, Circuit Judge, FAY, Senior Circuit Judge, and HANCOCK[*],
Senior District Judge.

PER CURIAM:

Appellant, Lourdes Gil, was convicted of one count of conspiracy to possess

cocaine with intent to distribute, in violation of 21 U.S.C. § 846.  Ms. Gil was

_____

[*] Honorable James H. Hancock, Senior U.S. District Judge for the Northern
District of Alabama, sitting by designation.

sentenced to a term of one hundred and twenty months incarceration, followed by five years of supervised release. Ms. Gil challenges her conviction, arguing that there was insufficient evidence to support a conspiracy conviction. Additionally, Ms. Gil argues that the trial court erred when it denied her motion to suppress, excluded the testimony of a character witness, and admitted a baby shower invitation found in Ms. Gil's vehicle as evidence of Ms. Gil's relationship to a co-defendant. After a thorough review of the record, we have determined that there was sufficient evidence to support Ms. Gil's conviction and that the trial court did not err when it denied Ms. Gil's motion to suppress, excluded the character witness, and admitted the baby shower invitation. Therefore, we AFFIRM.

I      Factual Background

Ms. Gil's husband, Julian Gil, had been meeting with a confidential informant for several months when they agreed that Mr. Gil would purchase twenty kilograms of cocaine. On May 4, 1995, Mr. Gil obtained the first five kilograms of cocaine from the informant and took the cocaine back to the house he shared with Ms. Gil to be tested. Approximately fifteen minutes after Mr. Gil and Jorge Vento, a co-conspirator, entered the residence, federal agents observed Ms. Gil leaving the residence; she was carrying plastic bags large enough to contain either cocaine or

2

money. Ms. Gil placed the bags in a yellow Cadillac and drove away from the residence.

Three federal agents, driving in separate vehicles, followed Ms. Gil's Cadillac and subsequently pulled her over several blocks from the house at approximately 5:15 p.m. After Ms. Gil voluntarily exited the vehicle, the agents notified Ms. Gil that they were conducting a narcotics investigation and asked her whether they could search her car, to which she responded affirmatively. The agents searched the car and discovered two plastic bags, one on the front floorboard and one on the back floorboard. The bag in the front of the car contained grapefruits and oranges; the bag in the back of the car contained $12,500 of United States currency wrapped with rubber bands. When an agent asked Ms. Gil who the money belonged to, she stated she did not know.

After securing the vehicle and leaving it at the side of the road, the agents handcuffed Ms. Gil and placed her inside Agent Faiella's vehicle. Ms. Gil's person was not searched. Then, two agents, with Ms. Gil in the vehicle, returned to the area of the Gil residence, but did not return to the residence itself until after the residence was secured. In the vehicle, on the way back to the residence, Agent Faiella again asked Ms. Gil if she knew who the money belonged to; at that time she stated the money belonged to her husband, Julian, who told her to put it in the car. Once the Gil

residence was secured, Ms. Gil was returned to the residence and at 6:30 p.m. Ms. Gil was formally arrested and transported to the DEA office.

II      Discussion

    A.      Sufficiency of the Evidence

We review the sufficiency of the evidence de novo. See United States v. Keller, 916 F.2d 628, 632 (11th Cir. 1990). To prove Ms. Gil guilty of conspiracy, the government was required to prove (1) that an agreement existed between Ms. Gil and one or more other persons, (2) to engage in unlawful activity, in this case to distribute cocaine. See United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998). After considering all of the evidence in the light most favorable to the government, we are convinced that a reasonable jury believed beyond a reasonable doubt that Ms. Gil was aware that Mr. Gil intended to distribute cocaine and that Ms. Gil engaged in activity designed to assist Mr. Gil with that plan.

First, to prove that an agreement existed between Ms. Gil and her co-conspirators, the government must prove that Ms. Gil had knowledge of the intent to distribute cocaine. See id. The government presented evidence indicating that Ms. Gil was present when the cocaine was brought into her home and that due to the size and layout of the house it would have been impossible for Ms. Gil to leave the house without knowledge that the cocaine was being tested in the kitchen. Additionally, the

4

government presented evidence that Ms. Gil's arms, fingers, and nail beds were contaminated with Clue Spray, a substance used to coat the bag of cocaine that is only visible under ultraviolet light. While it would have been possible for Ms. Gil to become contaminated secondarily from touching her husband, who directly touched the bag of cocaine, the jury could have properly found that Ms. Gil became contaminated directly from touching the bag itself. Therefore, the Government presented sufficient evidence of Ms. Gil's knowledge of the cocaine so that the jury could properly conclude that Ms. Gil was aware that her co-conspirators intended to distribute cocaine.

In addition to knowledge of the intent to distribute the cocaine, a conspiracy conviction requires that Ms. Gil actively participated in furthering the plan. See id. The Government proffered, and the jury accepted, the inference that Ms. Gil participated in furthering the conspiracy to distribute the cocaine by removing a bag of money from the house before the cocaine buyers arrived. Ms. Gil left the house shortly after the cocaine arrived with a bag filled with $12,500 in cash, wrapped in rubber bands. The Government surmised in closing argument that Ms. Gil "played an intricate part in this conspiracy, not a big part. She didn't go out and get the cocaine and bring it back. She didn't distribute it, but she moved money out of that house to prepare the house for the transaction." Although Ms. Gil's participation in

the conspiracy may have been slight by comparison to the actions of her co-conspirators, her participation was sufficient enough for a reasonable jury to find her guilty of conspiracy, as the jury did in this case.  Therefore, we hold that a reasonably jury could and did find Ms. Gil guilty of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846.

> B.    Motion to Suppress

We review the district court's denial of Ms. Gil's  motion to suppress under a mixed standard of review.  We review the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts de novo.  See United States v. Blackmon, 66 F.3d 1572, 1577 (11th Cir. 1995).  In this appeal, Ms. Gil argues that she was arrested without probable cause when she was handcuffed in the back of a police car and that the fruits of that "arrest" should be suppressed.  The district court denied her motion to suppress based upon a finding that the Government had reasonable suspicion to stop Ms. Gil's car under Terry v. Ohio, 392 U.S. 1 (1968)[1] and that her detention did not ripen into a full arrest until after Ms. Gil's house was searched and the agents obtained probable cause.  After reviewing the circumstances surrounding Ms. Gil's detention, we agree that Ms. Gil was

---

[1]Ms. Gil does not challenge the district court's determination that the initial stop was an appropriate Terry stop.

appropriately detained for seventy-five minutes under <u>Terry</u> and not arrested until after the agents searched the house, at which time the agents had probable cause to arrest Ms. Gil.[2] Therefore, we affirm the district court's denial of Ms. Gil's motion to suppress.

Ms. Gil does not challenge the propriety of her initial detention; her challenge is to the length and circumstances of her detention. Ms. Gil argues that because she was detained for approximately seventy-five minutes and placed in handcuffs in a police car, her detention exceeded that allowed by <u>Terry</u> and ripened into a full scale arrest. In evaluating the reasonableness of an investigatory stop, we must examine whether the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." <u>United States v. Sharpe</u>, 470 U.S. 675, 685 (1985). We consider the "totality of the circumstances." <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999). There are several issues relevant to this analysis, "including the law enforcement purposes served by the detention, the diligence with

---

[2] Although we need not decide this issue because we hold that the <u>Terry</u> stop was reasonable, the facts support a finding that could have been made by the trial court that the police had probable cause to arrest Ms. Gil at the time that they discovered the bag containing $12,500 in her car. After viewing the bag containing the money, it is clear to us that Ms. Gil must have known that the bag contained a large quantity of cash. When this knowledge is combined with the fact that Ms. Gil left the house fifteen minutes after the cocaine arrived, we conclude that there was probable cause to arrest Ms. Gil before the house was searched.

7

which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1998) (citations omitted). We will consider each issue in turn.

Considering first the law enforcement purpose served by the detention of Ms. Gil, this Court has stated that the most important factor "is whether the police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." Hardy, 855 F.2d at 759. Here, the agents detained Ms. Gil while they pursued their investigation of the Gil residence. It was necessary for the agents to detain Ms. Gil to prevent her from jeopardizing their investigation of the residence. Ms. Gil was detained for only as long as it was necessary to complete their investigation of the Gil residence. This fact also supports the second factor we must consider – "the diligence of the police in pursuing the investigation." Id. at 759-60. The police were diligent in their investigation of the residence and did not detain Ms. Gil without formally arresting her for any amount of time longer than it was necessary to complete that investigation.

Finally, we must consider the "actual scope and intensity of the intrusion." Id. at 760. Here, Ms. Gil was handcuffed and placed in the back of a police car; although this is a severe form of intrusion, we conclude its necessity was supported by the circumstances. Ms. Gil was not searched at the scene because there was not a female

officer available to conduct that search; thus, the agents did not know whether Ms. Gil was armed. Ms. Gil was placed into a vehicle with two officers and there is no evidence in the record to indicate whether there was a cage in that vehicle to protect the officers from Ms. Gil in case she was armed. Therefore, to maintain the safety of the officers and the ongoing investigation of the residence, handcuffing Ms. Gil and detaining her in the back of the police car was reasonable. After considering the totality of the circumstances surrounding Ms. Gil's detention, including the length of time Ms. Gil was detained before she was arrested, we hold that Ms. Gil's detention was reasonable and affirm the district court's denial of Ms. Gil's motion to suppress.

### C.     Exclusion of Character Witness Evidence

Ms. Gil sought to admit the testimony of a purported character witness, Frank Alam. After brief questioning by defense counsel it became clear that Mr. Alam did not have contact with Ms. Gil in 1995, the year she was arrested. Mr. Alam testified that he lived in Cuba in 1995 and did not move to the United States until early 1998, but that he had known Ms. Gil's family for twenty years. The district court excluded Mr. Alam's testimony because Mr. Alam did not know Ms. Gil at the time of the offense and the trial judge believed that Mr. Alam did not have an adequate basis for expressing an opinion as to Ms. Gil's character. We will not overturn the district

court's decision to exclude this evidence absent a clear showing of abuse of discretion. See United States v. Cannon, 41 F.3d 1462, 1465 (11th Cir. 1995). While the district court acknowledged that courts are more flexible regarding the admissibility of opinion testimony, such as this, as opposed to reputation testimony, see United States v. Watson, 669 F.2d 1374, 1382 (11th Cir. 1982), the court properly distinguished Watson as addressing the credibility of witness testimony, not the character of a defendant. Here, the trial judge did not abuse his discretion when he determined that the proffered character witness had an inadequate basis for expressing an opinion as to Ms. Gil's character.

### D.    Admission of Baby Shower Invitation

Over objection, the Government introduced into evidence a baby shower invitation found in Ms. Gil's car from Caridad Vento, the wife of Mr. Vento, one of Ms. Gil's co-conspirators. The Government offered the invitation to prove that a relationship existed between Ms. Gil and Mr. Vento. The trial judge determined that the baby shower invitation was relevant; any inferences drawn from the existence of the baby shower invitation in Ms. Gil's vehicle are left to the fact-finder. The trial judge did not abuse his discretion when he admitted the invitation.

### IV    Conclusion

The Government presented sufficient evidence to support Ms. Gil's conviction. Additionally, the district court did not err when it denied Ms. Gil's motion to suppress, and did not abuse its discretion when it excluded Ms. Gil's character witness and admitted a baby shower invitation found in Ms. Gil's vehicle. Therefore, the judgment of the district court is AFFIRMED.