**UNITED STATES of America,**

v.

**Gregory Hollis DAVIS.**

**No. CR. 00–70–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

July 11, 2001.

Stephen P. Feaga, U.S. Attorney's Office, Montgomery, AL, for plaintiff.

William K. Abell, Shinbaum, Abell, McLeeod & Vann, Montgomery, AL, for defendant.

## SUPPLEMENTAL ORDER

MYRON H. THOMPSON, District Judge.

The court, having been informed by the government of the possibility that its order of June 18, 2001, contained a factual error, and upon hearing argument on the matter during the sentencing hearing held on July 10, 2001, adds the following comments to that order.

The court's attention has been called to its finding that officers at the scene of the March 22, 2000, roadblock made a plain-view identification of the methamphetamine in Davis's vehicle before a registration check of Davis's shotgun had been completed. Based in part upon this finding, the court upheld the magistrate judge's conclusion that the detention and search of Davis did not violate his rights under the fourth amendment to the United States Constitution.

The government is correct to point out that the evidence presented did not establish a precise time at which the plain-view identification was made. It had occurred by 12:42 p.m., when Detective Murphy arrived on the scene and was informed by officers already there that they had seen bags of suspected controlled substances tucked in Davis's jacket on the front seat of his vehicle. But according to Officer Siems, it occurred after the shotgun cleared. However, the time the shotgun cleared has also not been precisely established. The evidence does show that the shotgun had not cleared before the drug-detection dogs arrived at the scene at 12:26 p.m. Therefore, between 12:26 p.m.

and 12:42 p.m. two events occurred: first, the shotgun cleared, then plain-view identification of the methamphetamine was made. The government cannot provide a more precise chronology than that.

■ Nonetheless, the court agrees with the government that, at the end of the day, this ambiguity should not change the court's original conclusion. If the drugs were discovered at the latest possible time, 12:42 p.m., and the gun cleared at the earliest possible time, 12:26 p.m., that leaves a maximum of 16 minutes during which Davis was held after the clearly legitimate reason for the stop had been completed—the shotgun check—and before another clearly legitimate one—the plain-view identification of drugs—had occurred. The court originally expressed concern that detention based on the identification of propane tanks and tubing alone could raise constitutional issue. The court did not have to make that express finding because under its original finding that a plain-view identification had been made before the shotgun cleared, the detention was clearly proper.

■ Even if the plain-view identification occurred after the shotgun cleared, the court would still find that this stop did not violate Davis's rights under the fourth amendment. As the Eleventh Circuit Court of Appeals has succinctly stated, the scope of an investigatory stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968), must be reasonably related to the circumstances that permitted the intrusion at the outset. *See United States v. Gil,* 204 F.3d 1347, 1350 (11th Cir.2000). Under *Terry,* law enforcement officials may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal

activity may be occurring, even if the officer lacks probable cause. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Gil,* 204 F.3d at 1351. Investigatory stops of over an hour have been allowed when justified by the purpose of the detention, the diligence of the police investigation, and the scope and intrusiveness of that investigation. *See, e.g., Gil,* 204 F.3d at 1351 (allowing a detention of 75 minutes during which the defendant was handcuffed); *United States v. Hardy,* 855 F.2d 753, 761 (11th Cir.1988) (allowing a 50–minute *Terry*-stop). Based on the propane tank and tubing and modified shotgun, officers were within their authority to detain Davis for 16 minutes (if indeed it was that long) while waiting for experienced drug-interdiction officers to arrive at the scene to make a final determination of cause based on a totality of the evidence. The same conclusion holds taking 11:56 a.m.—the point at which Davis was first stopped—as the starting point for the detention.

Finally, judges must keep in mind that the bottomline of fourth-amendment analysis is reasonableness, not scrutiny of technicalities. *See Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. Although the length of time an individual is detained by the police must be a factor the court considers, the proper analysis looks to the reasonableness of the full context of the situation. Absent extraordinary circumstances, which are not present here, judges should not flyspeck the actions of police engaged in general every-day investigatory activity as if the court were looking for some constitutional violation; for general fourth-amendment analysis, police should not be required to justify their time by the second and the minute. Here, the full context of this situation leaves little doubt that the actions of the police were reasonable and no constitutional violation occurred.