**UNITED BENEFIT LIFE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**UNITED STATES LIFE INSURANCE COMPANY, Defendant–Appellant,**

**Sally Y. King, Defendant.**

**No. 93–8838.**

United States Court of Appeals, Eleventh Circuit.

Oct. 27, 1994.

Rehearing Denied Dec. 9, 1994.

H. Sanders Carter, Jr., Michael A. Coval, Carter & Ansley, Atlanta, GA, for appellant.

Beryl Harold Weiner, Weiner, ·Yancey & Dempsey, Atlanta, GA, for Sally King.

Andrew John Ekonomou, Howell Alexander Hall, Boyce, Ekonomou & Atkinson, Atlanta, GA, for appellee.

Before ANDERSON and BIRCH, Circuit Judges, and ALBRITTON *, District Judge.

ALBRITTON, District Judge:

This is a dispute between two insurance companies over whether one or both are primarily liable for the payment of certain medical expenses.

Appellant United States Life Insurance Company ("U.S. Life") appeals the district court's order denying its motion for summary judgment and granting the motion for summary judgment filed by appellee United Benefit Life Insurance Company ("United Benefit"). U.S. Life contends that United Benefit is primarily liable for the medical expenses, while U.S. Life is only secondarily liable. United Benefit maintains that both carriers are primarily liable, and therefore, they should share the liability on a pro rata basis. The district court agreed with United Benefit and held the two carriers liable on a pro rata basis. Because we find that United Benefit is primarily liable for the medical expenses, and U.S. Life is only secondarily liable, we reverse the district court and enter judgment in favor of U.S. Life.

## I. BACKGROUND

On December 28, 1991, Sally King sustained a gunshot wound to her back. As a result, she incurred substantial medical expenses. On the date of her injury, and at all times material to this case, King was insured under two policies of group health insurance. The first policy, which was issued by United Benefit, became effective June 1, 1991. It covered King as a member of the American Association for Consumer Benefits, the group policyholder. The second policy, which was issued by U.S. Life, became effective December 1, 1991. It covered King as an employee of R.C. Specialty Industrial Corporation, the group policyholder. The U.S. Life policy was part of an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1002(1).

Both policies, standing alone, provide primary coverage for King's medical expenses. However, the policies also contain coordination of benefits provisions ("COB provisions") which are intended to establish the order of payment in a case, such as this one, where two separate policies, standing alone, would provide primary coverage. The carriers could not agree on the net effect of their respective COB provisions.

On August 3, 1992, United Benefit filed a declaratory judgment action against King and U.S. Life in the Superior Court of DeKalb County, Georgia. United Benefit sought a declaration that U.S. Life was primarily liable for King's medical expenses, and United Benefit was only secondarily liable.

On September 17, 1992, King filed a pleading in the state court action entitled "Motion to Dismiss, Affirmative Defenses, Answer, Counter–Claims, Cross–Claims and Jury Demand." In this pleading, King asserted claims against both carriers for medical expenses and for statutory bad faith penalties under Georgia law. Based on federal jurisdiction over King's ERISA claims against U.S. Life,[1] U.S. Life removed the entire case to the United States District Court for the Northern District of Georgia. King's claims against both carriers were subsequently settled and dismissed by consent of the parties.

In April of 1993, United Benefit and U.S. Life filed cross-motions for summary judgment. In its motion, United Benefit did not contend that U.S. Life should be the sole primary payor of King's medical expenses, as

---

* Honorable W. Harold Albritton, III, U.S. District Judge for the Middle District of Alabama, sitting by designation.

1. Federal jurisdiction over King's claims against U.S. Life existed by virtue of 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) which gives federal courts jurisdiction over suits to recover benefits under ERISA. U.S. Life removed the entire case, instead of only King's cross-claims against U.S. Life, pursuant to 28 U.S.C. § 1441(c).

it had done in its complaint. Instead, United Benefit conceded that the COB provision in its policy dictated that it pay its benefits first.[2] However, United Benefit argued in its motion, and now argues on appeal, that the COB provision in U.S. Life's policy dictates that U.S. Life pay its benefits first. Since each policy dictates that it pay first, argues United Benefit, the policies are irreconcilable or "mutually repugnant," and therefore, the two carriers should share the liability on a pro rata basis. U.S. Life, on the other hand, argues that its COB provision does not require it to pay first, but, rather, dictates that United Benefit pay its benefits first, and therefore United Benefit is the sole primary insurer of King's medical expenses.

In its order of June 1, 1993, the district court granted United Benefit's motion and denied U.S. Life's motion. The district court held that the respective COB provisions are mutually repugnant and ordered the two carriers to pay King's medical expenses on a pro rata basis. U.S. Life now appeals the district court's ruling.

## II. STANDARD OF REVIEW

 This court has explained many times that a district court's interpretation of an unambiguous contract is reviewed on appeal *de novo* as a question of law. *See, e.g., Carriers Container Council v. Mobile Steamship Assoc.*, 896 F.2d 1330, 1337, *modified on rehearing*, 904 F.2d 28 (11th Cir.1990). On the other hand, if a contract is ambiguous and the district court must look to extrinsic evidence to determine the intent of the parties, the district court's determination of such

intent is a finding of fact and is reviewed using the clearly erroneous standard. *Id.* In the case at bar, the insurance policies are not ambiguous, and the district court did not look beyond the language of the policies to determine their meaning. Therefore, we review the district court using the *de novo* standard.[3]

## III. DISCUSSION

 We find that the COB provision contained in the U.S. Life policy dictates that United Benefit pay its benefits first. Since the parties agree that the United Benefit COB provision dictates that United Benefit pay first, we hold that there is no conflict between the policies' respective COB provisions, and United Benefit is the sole primary insurer of King's medical expenses.

The COB provision in the U.S. Life policy reads, in pertinent part, as follows:

[T]he plan that will pay its benefits first will be:

1. the plan which covers the person as an employee rather than as a retiree or a laid off person.

Item 1 will not apply unless a similar provision is contained in all plans. In this case items 2, 3 or 4 will determine which plan pays first.

2. if 1 does not apply, the plan which covers the person as an employee, retiree or laid off person rather than as a dependent.

3. if 1 and 2 do not apply, the plan which covers the person as a dependent of the

---

2. The United Benefit COB provision consists of the following two rules:

 (a) The benefits of a plan which covers the person on whose expense claim is based other than as a dependent will be determined before the benefits of a plan which covers such person as a dependent;
 (b) When Rule (a) above does not establish an order of benefit determination, the benefits of a plan which has covered the person on whose expense claim is based for the longer period of time will be determined before the benefits of a plan which has covered such person the shorter period of time.

 (United Benefit Policy at 24–25). United Benefit concedes that Rule (a) does not apply to this case

because King is not covered as a dependent under either policy. United Benefit also concedes that Rule (b) does apply, and it dictates that United Benefit pay first because its policy has covered King longer than the U.S. Life policy.

3. United Benefit's argument that *In re Alchar Hardware Co.*, 764 F.2d 1530, 1534 (11th Cir. 1985), requires us to apply the clearly erroneous standard to this case is without merit. As this court has previously explained, the clearly erroneous standard was used in *Alchar* because it concerned an ambiguous contract which had to be clarified by extrinsic evidence. *In re Sublett*, 895 F.2d 1381, 1384 n. 6 (11th Cir.1990).

parent whose month and date of birth occurs earlier in the year.

. . . . .

4. if 1, 2 and 3 do not apply, the plan which has covered the employee for the longer time rather than for the shorter time.

The parties advance very different interpretations of these four rules.

While conceding that Rules 1 and 3 do not apply to this case, United Benefit argues that Rules 2 and 4 dictate that U.S. Life pay its benefits first in this case. United Benefit contends that the meaning of Rule 2 is that the policy covering the insured person as an employee, retiree or laid off person is primary over the policy covering the insured person on some other basis. Similarly, United Benefit reasons that Rule 4 is intended to make the policy covering the insured person as an employee primary over the policy covering the insured person on some other basis. Since U.S. Life covers King as an employee of the group policyholder and United Benefit covers King merely as a member of the group policyholder, United Benefit argues that Rules 2 and 4 require U.S. Life to pay its benefits first.

U.S. Life, on the other hand, argues that Rules 1, 2 and 3, by their terms, do not apply to this case. U.S. Life contends that Rule 4 is the only one of the rules that applies, and Rule 4 makes United Benefit the sole primary insurer because United Benefit has covered King for longer than U.S. Life has covered her.

We agree with U.S. Life. By their terms, the first three rules of the U.S. Life COB provision do not apply to this case. Rule 1 does not apply to this case because King is not covered by either policy as a retiree or laid off person. Contrary to United Benefit's contentions, Rule 2 does not apply because King is not a dependent under either policy. Rule 3 also does not apply because King is not a dependent under either policy. The only rule that applies to this case is Rule 4.

We find Rule 4 to be determinative. Once again, that rule states that "if [Rules] 1, 2 and 3 do not apply, the plan which has covered the employee for the longer time rather than for the shorter time [pays its benefits first]." In this case, it is undisputed that United Benefit has covered King for longer than U.S. Life. Therefore, according to the U.S. Life COB provision, United Benefit must pay its benefits first.

■ We do not agree with United Benefit's contention that the word "employee" in Rule 4 exhibits an intent to distinguish between the two policies on the basis of the insured's status as an employee or a nonemployee. Instead, we find that "employee" is merely a term used to identify the primary insured. After all, the U.S. Life policy is an employee welfare benefit plan under ERISA. It is logical that such a plan would refer to the primary insured as the "employee."

Not only is it logical, an examination of the U.S. Life policy shows that the word "employee" is often used in such policy to refer to the primary insured. For example, the policy's definition of "insured person" is "an insured employee or insured dependent." (U.S. Life policy at G–19001 DEF). Since an insured dependent is a secondary insured (i.e., the insured dependent's coverage is derivative of the primary insured's coverage), the only primary insured under the policy is, by definition, an "employee." [4]

The U.S. Life policy goes on to refer to the primary insured as "employee" in other places. For example, in the policy's discussion of a dependent's eligibility for coverage, one of the subsections is entitled "Date Employees Are Eligible for Dependents' Insurance." That subsection states as follows:

You will be eligible for dependents' insurance on the later of:

–the date you are eligible for employee's insurance, or

–the date you obtain a dependent.

(U.S. Life Policy at G–19001 D–1). It is clear from this subsection that "you" and "employee" refer to the primary insured, and

---

**4.** Although only an "employee" can be a primary insured, the U.S. Life policy defines "employee" broadly to include those who have ceased full time work due to disability, layoff, part-time work, leave of absence, and strike. (U.S. Life policy at G–19001 E).

it is clear that one can become a primary insured only as an employee. The same can be said for a "Note" that appears in the policy. It reads as follows:

> If you are insured for dependents' insurance, the words "Employees & Dependents" appear after the appropriate coverage title(s) listed in the COVERAGES PROVIDED section of the [policy]. If you are not insured for dependents' insurance, only the word "Employee" appears.

(*Id.*). In King's case, only the word "Employee" appears in the "Coverages Provided" section of the policy because no dependents are covered.

Finally, in a section entitled "Employee Eligibility," the U.S. Life policy refers to the primary insured as "you" and "employee" interchangeably. For example, one of the subsections is entitled "Date *Employees'* Insurance Ends." That subsection begins be stating, "*Your* insurance will end . . . ." (U.S. Life Policy at G–19001 E).

In addition to the language used throughout the U.S. Life policy, we note that the language and structure of the U.S. Life COB provision, standing alone, also supports our reading of Rule 4. When the COB provision distinguishes between the two applicable policies based on the insured's status under each policy, it uses "as" clauses. Thus, Rule 1 states that "the plan which covers the person *as an employee* rather than *as a retiree or laid off person* [will pay its benefits first.]" (emphasis added). Rule 2 states that "the plan which covers the person *as an employee, retiree or laid off person* rather than *as a dependent* [will pay its benefits first]." (emphasis added). If Rule 4 intended to distinguish between the insured person as an employee or non-employee, Rule 4 would have used an "as" clause, just as Rules 1 and 2 do, and would have referred to "the person as an employee." Instead, Rule 4 simply states that "the plan which has covered *the employee* for the longer time rather than for the shorter time [will pay its benefits first]." Therefore, we find that when Rule 4 is read in the context of the rest of the COB provision, it unambiguously distinguishes between the two applicable policies on the basis of time, not the insured's status as an employee or non-employee.

Thus, it is clear that the COB provision in the U.S. Life policy uses the word "employee" merely to identify the primary insured. We, therefore, read Rule 4 of the U.S. Life COB provision to say, "[I]f [Rules] 1, 2 and 3 do not apply, the plan which has covered the *primary insured* for the longer time rather than for the shorter time [pays its benefits first]." As previously explained, Rules 1, 2 and 3 do not apply to this case, and therefore, Rule 4 is controlling. Under Rule 4, the United Benefit policy, which has covered the primary insured the longest, is primary, and the U.S. Life policy is secondary.

## IV. CONCLUSION

We find that the U.S. Life policy, like the United Benefit policy, unambiguously requires that United Benefit provide King with primary coverage for her medical expenses. U.S. Life is only secondarily liable for King's medical expenses, and therefore, it is responsible only for such expenses that exceed the limit of United Benefit's coverage.

The district court erred in ruling that the United Benefit policy and the U.S. Life policy were mutually repugnant, and that the parties were responsible for King's medical expenses on a pro rata basis. We, therefore, reverse the summary judgment in favor of United Benefit and enter judgment for U.S. Life.[5]

REVERSED and RENDERED.

---

5. Since we find that the respective COB provisions are compatible and determine the outcome of this case, we do not reach the issue of how the Georgia Insurance Commissioner's priority of payment rules would affect this case if the COB provisions were irreconcilable.